**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO.: 3:22-CR-0739-MGL** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JAMES SEIDEL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT JAMES SEIDEL'S SENTENCING MEMORANDUM**
**AND MOTION FOR DOWNWARD VARIANCE**

## I.      Contents

I.   Contents .................................................................................................................. 1

II.  Factual and Procedural History.................................................................................. 2

III.  Mr. Seidel's Personal Background and Characteristics ............................................ 3

IV.  A Non-Custodial Sentence is Warranted Under 18 U.S.C. § 3553(a).............................. 3

   A.   Sentencing Factors Under the Guidelines................................................................. 3

   B.   The Government Has Agreed to a Probationary Sentence .................................................. 5

   C.   A Variance is Warranted Due to Mr. Seidel's History and Characteristics ...................... 5

      1.   Family Considerations ........................................................................................ 5

      2.   Personal History and Characteristics ................................................................... 6

      3.   Age and Health Considerations ........................................................................... 6

   D.   A Non-Custodial Sentence is Warranted Under 18 U.S.C. § 3553(a)............................... 7

      1.   A Non-Custodial Sentence Sufficiently Serves the Purposes of Specific Deterrence, General Deterrence, and Protecting the Public ........................................................ 8

      2.   A Non-Custodial Sentence Would Reflect the Seriousness of the Offense and Provide Just Punishment for the Offense ............................................................................ 9

V.   Mr. Seidel and His Attorneys Have Worked With the Government to Attempt to Satisfy the Restitution Required in this case.......................................................................... 9

VI.  Conclusion ............................................................................................................. 100

1

## II.     Factual and Procedural History

In 2021, Mr. Seidel operated a seafood distribution and retail business in the Fort Mill area of South Carolina. Like many business owners at the time, Mr. Seidel sought government assistance during the economic downturn associated with the pandemic. As such, Mr. Seidel applied for, and obtained, an Economic Injury Disaster Loan ["EIDL"] in the amount of $200,000. The EIDL loan program is administered by the Small Business Association. Unlike other programs such as the Paycheck Protection Program ["PPP"], pursuant to the terms of the EIDL loan, Mr. Seidel was required to repay the loan.

Some of the funds were used by Mr. Seidel for legitimate working capital. Other funds, however, were placed in various digital investment accounts which was not an eligible business expense under the terms of the loan program. Mr. Seidel's statements made in the SBA loan application that the funds were to be used solely for working capital were not accurate and represent the basis for the offense of conviction.

Unlike the majority of other PPP or EIDL cases, Mr. Seidel was otherwise legitimately eligible and entitled to the loan and his application contained no other falsehoods or misrepresentations.

On August 23, 2022, Mr. Seidel was the sole defendant named in a 17-count indictment filed in the District of South Carolina. Thereafter, on July 18, 2023, a 1-count Information was filed alleging a violation of 18 U.S.C. § 1001. PSR at ¶ 1.

On July 25, 2023, Mr. Seidel, accompanied by undersigned counsel, pursuant to the terms of a written plea agreement, pleaded guilty to Count 1 of the Information.

The Presentence Report ["PSR"] has been prepared, and based upon a total adjusted

offense level of 11, and a criminal history category of I, the advisory guideline imprisonment range is 8 to 14 months (Zone B). Based upon the information contained herein, as well as the arguments to be addressed at the sentencing hearing, Mr. Seidel respectfully requests that this Court accept the terms of the plea agreement and sentence him to a term of probation.

### III.  Mr. Seidel's Personal Background and Characteristics

Mr. Seidel was, until his indictment on these charges, a self-made American success story. Mr. Seidel has no criminal history. PSR at ¶ 29.  Mr. Seidel grew up in Wisconsin and after graduating high school, he attended the University of Wisconsin. He did not graduate, but instead entered the workforce.

Mr. Seidel then became a husband and father. Many years later, while vacationing with his family at the coast of North Carolina, he realized he wanted to start his own seafood business. His business, Grayson and Mae LLC, d/b/a as Carolina Fish Market, was ultimately a successful business. It allowed him to provide for his family but also afforded him the ability to be an involved father to his children.

Mr. Seidel is extraordinarily involved with his children's lives. These relationships have only become closer after ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████   ██████████████

███████████████████████████

### IV.  A Non-Custodial Sentence is Warranted Under 18 U.S.C. § 3553(a)

#### A.  Sentencing Factors Under the Guidelines

Following *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts are not required to impose a sentence within the Guidelines range. Instead, the Court should determine a reasonable sentence under a two-step process. *Gall v. United States*, 552 U.S. 38, 49 (2007). First, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id*. (citing *Rita v. United States*, 551 U.S. 338, 347–48 (2007)). Next, the Court must give "both parties an opportunity to argue for whatever sentence they deem appropriate" and "consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49–50. In doing so, the Court "may not presume that the Guidelines range is reasonable." *Id.* In fact, sentencing judges may "place greater reliance" on the section 3553 factors than the Guidelines, particularly in the context of financial fraud cases. *See, e.g., United States v. Adelson*, 441 F. Supp. 2d 506, 509, 515 (S.D.N.Y. 2006) (noting "the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss.").

Thus, although the Guidelines are "the starting point and the initial benchmark," the Court's sentencing inquiry must focus on the section 3553(a) factors and must be grounded in an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 49–50. To that end, the Court must consider the following statutory factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment; (3) the need to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; (6) the kinds of sentences available; (7) any pertinent policy statements issued by the Sentencing Commission; (8) the need to avoid unwarranted sentence disparities among defendants with similar records; and (9) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Congress has further instructed that the Court should recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582. With that limitation in mind, and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes of [sentencing]." 18 U.S.C. § 3553(a) (emphasis added). As detailed below, a non-custodial sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing in this case.

### B.     The Government has agreed to a Probationary Sentence

As addressed in the PSR and the Plea Agreement, the Government has acknowledged that a sentence of a term of probation is the appropriate resolution in this case.  See PSR at ¶ 7 and Dkt. 43 at ¶ 4.

### C.     A Variance is Warranted Due to Mr. Seidel's History and Characteristics

#### 1.     Family Considerations

A sentencing court "may take idiosyncratic family circumstances into account" when "fashioning a variant sentence." *United States v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008) (citations omitted). As detailed above, Mr. Seidel is a father of two college aged children whose lives he is involved in and with whom he maintains a close relationship. Additionally, Mr. Seidel is a married man. By accepting the terms of the plea agreement and sentencing him to a term of probation, Mr. Seidel will be able to maintain these relationships ███████████████████████████

████████

Accordingly, Mr. Seidel requests the Court follow the lead of numerous other sentencing courts and take these unique family considerations into account in fashioning an equitable, non-custodial sentence. *See, e.g.*, *United States v. Brown*, No. 18 CR 190-3 (VB), 2020 WL 4548045, at *2 (S.D.N.Y. Aug. 6, 2020) (downward variance from 70-87 month Guideline range following a conviction at trial for bank robbery to 36 months' imprisonment because the defendant "was the

single mother of a five-year-old child, and that she wasn't the one who terrorized the people in the bank with a gun"); *United States v. Bueno*, 549 F.3d 1176, 1181 (8th Cir. 2008) (granting a departure for a defendant who was his wife's primary caregiver); *United States v. Spedden*, 917 F. Supp. 404, 408 (E.D. Va. 1996) (granting a departure to a home confinement sentence where a defendant's family structure stood to be "utterly decimated").

### 2.    Personal History and Characteristics

The Court should also grant a variance based on Mr. Seidel's "history and characteristics." Mr. Seidel has no criminal history.  The conduct alleged in the offense of conviction is out of character for a man who has lived an otherwise law-abiding life.  Based upon the totality of the circumstances and ███████████████████████████████, the Court is presented with a unique case.

### 3.    Age and Health Considerations

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████ warrant a significant variance in this case as it is likely that he would not receive the required medical care in a Bureau of Prisons ("BOP" facility. In fact, the United States Department of Justice – Office of Inspector General ("OIG") has found systemic deficiencies in the BOP's delivery of medical services. OIG found that, at a number of facilities, BOP "did not provide required medical services to inmates," including providing inadequate treatment for chronic conditions, failure to properly monitor side effects of medication, allowing unqualified providers to render medical services, and failure to meet performance target levels on treating serious conditions. *See* U.S. Dep't of Justice, Office of Inspector General, Audit Division,

*The Federal Bureau of Prison's Efforts to Manage Inmate Health Care* ii–xix, 32–34 (2008), *available at* www.justice.gov/oig/reports/BOP/a0808/final.pdf. These conditions have worsened in light of the substantial toll that COVID-19 has taken on BOP facilities, inmates, and staff.

Indeed, federal courts have frequently granted variances in similar circumstances. *See, e.g., United States v. Cottingham*, 2008 WL 4809212, at *2 (4th Cir. Nov. 4, 2008) (affirming a South Carolina District Judge's grant of a defendant's request for a variance in light of the defendant's long history of health problems, lack of a criminal record, and outpouring of support from the community); *United States v. White*, 506 F.3d 635, 645 (8th Cir. 2007) (affirming a 33% downward variance based, in part, on the 51-year-old defendant's age and history of diabetes, high blood pressure, weakness in his extremities, and difficulty walking); *United States v. Gray*, 453 F.3d 1323, 1324 (11th Cir. 2006) (affirming a sentence that was less than half of the Guidelines' range in light of the 64-year-old defendant's age and history of health problems); *United States v. Coughlin*, 2008 WL 313099, at *4 (W.D. Ark. Feb. 1, 2008) (granting a variance in light of the defendant's cardiac condition, the likelihood that the condition would progress, and the likelihood that defendant's health would continue to deteriorate). Accordingly, Mr. Seidel requests that this Court impose a non-custodial sentence ████████████████████████████ ████████████████████████████████████ .

### D.     A Non-Custodial Sentence is Warranted Under 18 U.S.C. § 3553(a)

The conduct to which Mr. Seidel has pled guilty is serious.  While his conduct might not be considered "aberrant" as that term is traditionally used in the United States Sentencing Guidelines, it certainly represents a significant departure from an otherwise law-abiding life.   Mr. Seidel's history and characteristics—outlined above—and his acceptance of responsibility support the imposition of a non-custodial sentence. Moreover, a probationary sentence would serve all the

Congressional goals outlined in 18 U.S.C. § 3553 and would be sufficient but not greater than necessary under the circumstances of this case.

### 1.     A Non-Custodial Sentence Sufficiently Serves the Purposes of Specific Deterrence, General Deterrence, and Protecting the Public

Congress has instructed "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582. Pursuant to 18 U.S.C. § 3553(a)(2)(B), this Court must consider both general and specific deterrence in imposing a sentence. *United States v. Ocampo*, 633 F. App'x 115, 117 (4th Cir. 2016). Here, a non-custodial sentence is justified under 18 U.S.C. § 3553.  Such a sentence would serve the dual goals of general and specific deterrence, and would protect the public. That is so because there is no justice in imposing a custodial sentence merely to make an example out of a defendant. Instead, the Court should consider the particular circumstances of the defendant, the 18 U.S.C. § 3553 factors as a whole, and the likelihood that a sentence will deter the defendant and others from committing criminal conduct in the future. *See Williams v. New York*, 337 U.S. 241, 247 (1949) ("The punishment should fit the offender and not merely the crime."). Consideration of those factors compels a non-custodial sentence in this case.

Turning first to general deterrence, it is well established that a severe financial penalty is an effective way to deter white-collar criminals. *See Musgrave*, 647 F. App'x at 534; *see also* Richard A. Posner, *Optimal Sentences for White-Collar Criminals*, 17 Am. Crim. L. Rev. 409, 410, 418 (1980) (noting that white-collar criminals are often more effectively punished by severe financial penalties than by imprisonment).

Moreover, a non-custodial sentence would serve the same general deterrence rationale as an imprisonment sentence.  Mr. Seidel's liberties will be restricted while on Probation, as they would with a term of imprisonment, but he will be in an environment where he ███████████ ████████████████████████████████████████████. *See Gall*, 552 U.S. at 48 ("We

recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). In sum, the restrictions that would accompany a non-custodial sentence in this case would advance the goals of general deterrence.

As to specific deterrence and protecting the public, Mr. Seidel is at no risk for reoffending. He has suffered severe consequences as a result of this case, including damage to his professional and personal reputation, substantial financial losses and attorneys' fees, and incredible stress and strain on his family. These consequences, while justifiable under the circumstances of this case, are more than sufficient to deter Mr. Seidel from committing any criminal activity in the future. The lessons learned in this case will prevent him from ever violating the law. Thus, a term of incarceration will serve no greater utility in deterring Mr. Seidel from criminal conduct, as the direct and collateral consequences he has already suffered have served that goal.

### 2. A Non-Custodial Sentence Would Reflect the Seriousness of the Offense and Provide Just Punishment for the Offense

Mr. Seidel will incur substantial limitations on his liberties while on probation—both professional and personal. His ability to travel, do business, and spend time with his family will potentially be limited by the terms of probation, but he will be able to spend his time in a productive manner and contribute to his family, society, and his community. Under the unique circumstances of this case, that constitutes just punishment and reflects the seriousness of the offense.

### V. Mr. Seidel and his attorneys have worked with the Government to attempt to satisfy the restitution required in this case.

As addressed herein, Mr. Seidel obtained $200,000 in loan proceeds. Contemporaneous with the indictment, the Government seized $71,189.49 in cryptocurrency and bank accounts. PSR at ¶ 4.

As the Court is aware, this Sentencing Hearing has been delayed ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. In the interim, undersigned counsel attempted to work with the attorneys for the Government (AUSAs Holliday and Sherard) to forfeit the seized assets prior to this Sentencing Hearing. Unfortunately, the mechanics of this process prior to the sentencing proved to be extraordinarily cumbersome for all involved.

Pursuant to the terms of the EIDL loan program, Mr. Seidel was to make monthly payments of $1,030.00 for a period of thirty (30) years. To date, the following payments have been made:

| | |
|---|---|
| 09/19/2023 | $21,595.84** |
| 10/12/2023 | $ 1,030.00 |
| 11/14/2023 | $ 1,030.00 |
| 03/12/2024 | $10,000.00 |
| 04/03/2024 | $10,000.00 |
| 04/15/2024 | $ 7,105.71 |
| 04/12/2024 | $20,000.00 |
| 05/30/2024 | $ 5,000.00 |
| 08/20/2024 | $ 1,030.00 |
| 09/10/2024 | $ 1,030.00 |
| 09/16/2024 | $45,000.00 |
| Total | $122,821.55 |

** Undersigned is informed and believes this payment was made by the Government from some of the seized assets.

## VI.     Conclusion

In conclusion, Mr. Seidel requests that the Court consider all the factors set forth in his Sentencing Memorandum, and the arguments presented at the sentencing hearing, and grant him a variance from the advisory guidelines and sentence him to a term of probation as it would represent a sentence that is no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Respectfully Submitted,

s/Judah VanSyckel
Judah VanSyckel
Saluda Law, LLC
137 East Butler Street, Suite 1
Lexington, South Carolina 29072
Telephone: (803) 939-6927
Fax: (803) 902-8004
Email: judah@saludalaw.com
D. SC. Attorney ID: 12778
SC Bar: 79114
www.saludalaw.com

s/Jason Peavy
Jason Peavy
Law Office of Jason Peavy
1529 Laurel Street
Columbia, South Carolina 29201
Telephone: 803-799-2643
Email: Jason@peavylaw.com
D. SC. Attorney ID: 7900

ATTORNEYS FOR DEFENDANT

Columbia, South Carolina

September 14, 2024